*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1824**

State of Minnesota,
Respondent,

vs.

Charles Steven Owens,
Appellant.

**Filed September 12, 2016
Affirmed
Randall, Judge**[*]

Pine County District Court
File No. 58-CR-14-901

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Reese Frederickson, Pine County Attorney, Michelle R. Skubitz, Assistant County Attorney, Pine City, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, St. Paul, Minnesota; and

Melissa V. Sheridan, Assistant Public Defender, Eagan, Minnesota (for appellant)

        Considered and decided by Worke, Presiding Judge; Connolly, Judge; and Randall,

Judge.

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**RANDALL**, Judge

Appellant Charles Steven Owens challenges his conviction of fifth-degree controlled-substance crime, arguing that the evidence was insufficient to prove that he knowingly possessed methamphetamine and that he received ineffective assistance of counsel. We affirm.

## FACTS

On November 11, 2014, Pine County Sheriff's Deputy Bradley Carlson was dispatched to the Grand Hinckley Inn to investigate an alleged incident of domestic assault. Deputy Carlson went to appellant's hotel room to speak with the victim. While in the hotel room, Deputy Carlson observed a Q-tip in an ashtray. From his training and experience, Deputy Carlson knew that methamphetamine users often use Q-tips to pack methamphetamine into pipes and to clean syringes.

Deputy Carlson subsequently made contact with appellant in the hotel lobby and placed him under arrest for the alleged domestic assault.[1] Deputy Carlson conducted a standard search incident to the arrest and discovered a plastic baggie in appellant's jacket pocket. It was a small baggie that Deputy Carlson knew from his training and experience is the type of baggie often used to package illegal drugs. Deputy Carlson observed a white powdery residue in the baggie that resembled methamphetamine residue. He commented

---

[1] Prior to trial, counsel for both parties agreed that the domestic assault charge would be dropped and that no testimony regarding the domestic assault would be presented to the jury. No argument disputing the validity of the arrest was raised.

to a trooper that he believed the baggie contained methamphetamine residue, and appellant interjected that it was "candy apple candy" in the baggie and that it was a "sugar residue," not illegal drugs.

Deputy Carlson conducted a preliminary field test of the residue. It tested positive for methamphetamine. A forensic scientist from the Minnesota Bureau of Criminal Apprehension later analyzed the baggie and concluded that it contained a trace amount of methamphetamine.

The state charged appellant with fifth-degree controlled-substance crime in violation of Minn. Stat. § 152.025, subd. 2(b)(1) (2014), for possessing methamphetamine. The state also charged him with fifth-degree assault but later dismissed that charge. Appellant had a jury trial and was found guilty of fifth-degree controlled-substance possession. The district court sentenced him to a stayed prison term of 13 months, 10 years' probation, and 180 days in jail. This appeal followed.

## D E C I S I O N

### I.

Appellant argues that the evidence was insufficient to convict him of the crime. In reviewing a challenge to the sufficiency of the evidence, we conduct "a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did." *State v. Ortega*, 813 N.W.2d 86, 100 (Minn. 2012) (quotation omitted). We assume that the jury believed the state's witnesses and disbelieved any contrary evidence. *Id.*

Appellant argues that evidence of a trace amount of methamphetamine in the baggie was insufficient to prove that he possessed methamphetamine in violation of Minn. Stat. § 152.025, subd. 2(b)(1). But the statute does not require the state to prove a specific weight as an element of the offense. *State v. Traxler*, 583 N.W.2d 556, 562 (Minn. 1998) (holding that a trace amount of methamphetamine was sufficient to support a conviction of fifth-degree controlled-substance crime). Evidence that the baggie on appellant at the time of his arrest contained trace amounts of methamphetamine was sufficient under the statute to prove that he possessed methamphetamine.

Appellant also argues that the evidence was insufficient to prove that he knew the substance he possessed was methamphetamine. "Possession crimes require proof that the defendant had actual knowledge of the nature of the substance in his possession." *State v. Ali*, 775 N.W.2d 914, 918 (Minn. App. 2009) (quotation omitted), *review denied* (Minn. Feb. 16, 2010). Knowledge is typically proved by circumstantial evidence. *Id.* at 919.

We apply a two-part test when reviewing a conviction supported by circumstantial evidence. *State v. Silvernail*, 831 N.W.2d 594, 598 (Minn. 2013). First, we identify the circumstances proved. *Id.* We construe conflicting evidence in favor of the verdict and assume the jury believed the state's witnesses and rejected evidence to the contrary. *Id.* at 599. Second, we determine whether the circumstances proved are consistent with guilt and inconsistent with any other rational hypothesis. *Id.* "Circumstantial evidence must form a complete chain that, in view of the evidence as a whole, leads so directly to the guilt of the defendant as to exclude beyond a reasonable doubt any reasonable inference other than guilt." *State v. Pratt*, 813 N.W.2d 868, 874 (Minn. 2012) (quotations omitted).

The circumstances proved here are as follows.  Deputy Carlson observed a Q-tip in an ashtray in appellant's hotel room and testified that Q-tips are often used by methamphetamine users.  Appellant had a baggie in his pocket, and Deputy Carlson testified that baggies of the sort found on appellant are commonly used to package drugs.  The baggie contained a white residue that resembled methamphetamine and in fact tested positive for methamphetamine.  Although appellant stated that the substance was sugar residue from candy, the jury evidently did not believe that, and appellate courts give deference to a jury on the facts.

These circumstances form a complete chain that leads to one reasonable inference: appellant knew the substance in his possession was methamphetamine.  The evidence was sufficient to prove appellant's knowledge of the contraband in his pocket.

**II.**

Appellant argues that he received ineffective assistance of counsel based on his trial counsel's closing argument.  "Generally, an ineffective assistance of counsel claim should be raised in a postconviction petition for relief, rather than on direct appeal."  *State v. Gustafson*, 610 N.W.2d 314, 321 (Minn. 2000).  "A postconviction hearing provides the court with additional facts to explain the attorney's decisions, so as to properly consider whether a defense counsel's performance was deficient."  *Id.* (quotation omitted).  But appellate courts will consider a claim of ineffective assistance of counsel on direct appeal when the appellant requests that we do so and when the record is sufficient to analyze the claim without any additional fact-finding.  *Voorhees v. State*, 627 N.W.2d 642, 649 (Minn. 2001).  Because appellant is basing his claim of ineffective assistance of counsel solely on

5

his trial counsel's closing argument, we conclude that the record is sufficient to address the claim.

The following excerpt from the trial transcript represents the closing argument of appellant's counsel in its entirety:

> Ladies and gentlemen of the jury, [y]our [h]onor, [c]ounsel, as we begin final argument the presumption of innocence still resides with this man. Only you can take it away and only after you're convinced beyond a reasonable doubt by evidence, not speculation, not reading his mind, but evidence, you have to have evidence. Every day all across the United States of America school children stand up, put their hand over their heart, and they repeat in unison, "I pledge allegiance to the flag of the United States of America and to the Republic for which it stands, one nation, under God, indivisible, with liberty and justice for all." I am asking for justice today. Thank you.

Appellant argues that this closing argument fell below an objective standard of reasonableness and that he was prejudiced as a result.

Claims of ineffective assistance of counsel present mixed questions of law and fact, and we review them de novo. *State v. Rhodes*, 657 N.W.2d 823, 842 (Minn. 2003). Minnesota appellate courts apply the two-prong test set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), to analyze a claim of ineffective assistance of counsel. *Id.* To prevail on the claim, "an appellant must demonstrate that counsel's performance fell below an objective standard of reasonableness, and that a reasonable probability exists that the outcome would have been different but for counsel's errors." *Id.* (quotation omitted). An appellate court need not address both prongs of the test if one is determinative. *Id.*

"There is a strong presumption that counsel's performance fell within a wide range of reasonable assistance." *State v. Miller*, 666 N.W.2d 703, 716 (Minn. 2003) (quotation omitted). We give particular deference to strategic decisions by trial counsel. *Id.* "Counsel's choice of strategy in closing argument should not be second-guessed." *State v. Brown*, 376 N.W.2d 451, 455 (Minn. App. 1985) (quotation omitted), *review denied* (Minn. Dec. 19, 1985); *see also Yarborough v. Gentry*, 540 U.S. 1, 8, 124 S. Ct. 1, 5 (2003) ("[J]udicious selection of arguments for summation is a core exercise of defense counsel's discretion.").

Appellant argues that his trial counsel's closing argument was objectively unreasonable because his counsel abandoned the theme of his opening statement that the state could not prove that appellant knew the substance in the baggie was methamphetamine. But defense counsel's statements to the jurors that they could not find appellant guilty based on "speculation" or "reading his mind" represent an argument attacking the state's proof on the element of appellant's knowledge of the substance in the baggie. The fact that it was a brief closing in which he reminded the jury of the presumption of innocence and the state's burden of proof beyond a reasonable doubt could have been a strategic decision since the trial itself was short and it was a simple case of drug possession.

The jury heard the evidence during trial, and all the proved circumstances led to the rational inference that appellant knowingly possessed methamphetamine in violation of the law. The district court instructed the jury that "the arguments or other remarks of an

attorney are not evidence." Appellant has not demonstrated that he received ineffective assistance of counsel.

**Affirmed.**